# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF OKLAHOMA

MARGARET A. DONOVAN, individually )
 and as surviving spouse of BRADLEY C. )
 DONOVAN, deceased, )
 )
        Plaintiff, )
 )
v. ) No. CIV-09-1396-D
 )
JAMES MARTIN WILSON and )
 JESSICA M. WILSON, )
 )
        Defendants. )

## ORDER

Before the Court is the Motion for Summary Judgment of Defendants James Martin Wilson and Jessica M. Wilson (the "Wilsons") [Doc. No. 20]. Plaintiff Margaret A. Donovan ("Mrs. Donovan") timely responded, and the Wilsons filed a reply. Both parties have also filed Court-authorized supplemental briefs.

I. Background:

In this action, Mrs. Donovan seeks recovery of damages based on personal injuries sustained in a June 5, 2009 motorcycle accident in a rural area of Northeast 63rd Street near Harrah, Oklahoma. Mrs. Donovan's husband, Bradley C. Donovan ("Mr. Donovan"),[1] was operating the motorcycle with Mrs. Donovan as his passenger. She alleges that a dog ran onto Northeast 63rd Street and began biting at the motorcycle's tires, causing Mr. Donovan to lose control of the motorcycle and skid off the road. Mrs. Donovan alleges the Wilsons owned the dog, and she seeks to hold them liable on claims of strict liability and common law negligence. Pursuant to Fed. R. Civ. P. 56, the Wilsons

---

[1]Mr. Donovan is deceased; however, the parties agree his death was unrelated to the accident at issue.

argue they are entitled to judgment on these claims.

II. Summary judgment standards:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, the non-moving party must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for her. *Id.* "[T]he requirement that a dispute be 'genuine' means simply that there must be more than 'some metaphysical doubt as to the material facts.'" *Scott v. Harris*, 550 U. S. 372, 380 (2007) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party, "to the extent supportable by the record." *Id.* at 394 n. 5; *MacKenzie v. City & County of Denver*, 414 F. 3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. However, a defendant need not disprove the plaintiff's claim; it must only point to "a lack of evidence" on an essential element of that claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). The burden then shifts to the plaintiff to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find for her; conclusory arguments are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein, and it is not the Court's responsibility to attempt to find evidence

which could support a plaintiff's position. *Id.* at 671-72.

"For purposes of summary judgment, 'facts must be established by evidence which would be admissible at trial.'" *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F. 3d 1089, 1101 (10th Cir.1999). A proffered affidavit in opposition to summary judgment cannot be based on conclusory allegations or an expression of belief or personal opinion rather than fact. "To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." Instead, such affidavits must set forth "specific facts showing there is a genuine issue for trial." *Trevizio v. Adams*, 455 F. 3d 1155, 1159 (10th Cir. 2006) (citing *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 902 (1990)). Conclusory allegations unsupported by specific evidence "will be insufficient to establish a genuine issue of fact." *Lujan*, 497 U.S. at 902.

In this case, the Wilsons argue the undisputed material facts demonstrate Mrs. Donovan cannot, as a matter of law, establish the essential elements of strict liability or common law negligence. They argue that Oklahoma's statute imposing liability for dog bites is inapplicable because the statute does not apply to rural areas. The Wilsons acknowledge that a genuine issue of material fact may exist as to ownership of the dog in question (*see* Wilsons' Reply, p. 2), but contend that, even if they were its owners, they cannot be liable under a theory of common law negligence because the undisputed facts establish they had neither actual nor constructive knowledge of the dog's propensity for violence.

Mrs. Donovan does not dispute the Wilsons' argument regarding Oklahoma's strict liability statute. However, she contends that judgment on her common law negligence claim is improper because the evidence reflects that whether the Wilsons owned the dog or had notice of its violent

3

tendencies are disputed issues.

III.  Evidence in the record:

The parties do not dispute that, at the time of the accident, the Wilsons resided at 21581 N. E. 63rd Street in Harrah, Oklahoma.  It is also not disputed that their residence is outside the boundaries and city limits of the City of Harrah, that their property consists of approximately 42 acres, and that the property is unfenced.

At the time of the June 5, 2009 accident on which Mrs. Donovan's claims are based, she and her husband were on a motorcycle on N. E. 63rd Street; they were accompanied by other motorcycle riders.  Mrs. Donovan alleges that a dog ran into the street and began biting at the motorcycle's tires, causing her husband to lose control.  It is not disputed the motorcycle left the roadway and skidded onto the shoulder, injuring both Mr. and Mrs. Donovan, who were transported by medical personnel to a local hospital for emergency treatment.  Mr. Donovan suffered several broken bones and was hospitalized for several days.

The undisputed facts establish the accident occurred on a dry, level two-lane asphalt road; although the exact time is not apparent from the record, the investigating officer reported it was light, and visibility was not impaired. Accident report, Donovan Ex. 1.  The parties agree no other vehicle was involved.

It is undisputed that the Wilsons' residence is not in the city limits of Harrah or any other incorporated city or town, and it is not subject to the Harrah City Code.  Affidavit of Art Sipes, Code Administrator for the City of Harrah, Wilson Ex. 4.  Mrs. Donovan does not dispute the Code Administrator's affidavit.

The evidence in the record establishes that stray dogs, cats, and other animals are frequently

seen in the vicinity of the Wilsons' property and that of their neighbors. It is also not disputed that much of the property in the vicinity is unfenced.

The Wilsons own two dogs, Bo and Pepper; these dogs are not alleged to have caused the accident. According to the Wilsons' undisputed testimony, their dogs remain outdoors most of the time, but are sometimes inside the Wilsons' residence. The Wilsons place their dogs' food and water outside their residence in an unfenced area.

The dog allegedly causing the accident is familiar to the Wilsons, although they deny that they own it. Mrs. Wilson described the dog as resembling an Australian sheep dog, and she testified that it roamed the Wilsons' property and that of their neighbors for about two years prior to the June 2009 accident. Jessica Wilson dep., Wilsons' Ex. 3, p. 23, lines 11-22. The Wilsons deny that they have ever allowed the dog into their residence. They also deny feeding the dog, although they concede it has probably eaten from their dogs' outdoor food bowls because the bowls are accessible. Mrs. Wilson testified the dog had also been on her neighbors' unfenced property and had eaten food left out for the neighbors' pets. Jessica Wilson dep., Wilsons' Ex. 3, p. 47, lines 7-25. She also testified she saw the dog frequently, but sometimes did not see it for up to a week; she did not know where it went during those times. *Id.,* lines 2-6.

According to Mr. Wilson, they have never taken the dog to the veterinarian. The Wilsons said it appears to be healthy, but they have never examined it. They deny that they played with the dog or paid any attention to it, and testified their children did not do so. However, the Wilsons concede their daughter gave the dog a name, "Dierks."

In an affidavit submitted by Plaintiff as a supplemental response to the summary judgment motion, the Wilsons' neighbor, Jane Beller, states the dog allegedly causing the accident "resides

5

at the Wilsons' residence," and it "chases cars driving in front the Wilsons' property with regularity"; she adds that "such behavior is apparent to those in this neighborhood, including the Wilsons." Affidavit of Jane Beller, unmarked exhibit to Mrs. Donovan's supplement to summary judgment response. A witness at the accident scene, Ronald Keith Mays, testified that Mr. Wilson acknowledged ownership of the dog when questioned about it. Ronald Keith Mays dep., Donovan's Ex. 1, pp. 43-44. The Wilsons deny these contentions.

IV. Application:

A. Statutory liability:

Oklahoma has enacted a statute imposing liability upon a dog owner for unprovoked injuries caused by the dog:

> The owner or owners of any dog shall be liable for damages to the full amount of any damages sustained when his dog, without provocation, bites or injures any person while such person is in or on a place where he has a lawful right to be.

Okla. Stat. tit. 4 § 42.1. As the Wilsons argue, however, the statute expressly provides that it "shall not apply to rural areas of this State or to any cities or towns that do not have city or village United States mail delivery service." Okla. Stat. tit. 4 § 42.3. According to the Oklahoma Supreme Court, an area outside city limits constitutes a "rural area" within the meaning of § 42.3. *Nickell v. Sumner*, 943 P. 2d 625, 628 (Okla. 1997).

The undisputed evidence before the Court establishes that the Wilsons' property is not within the city limits of Harrah or any other city or town. In her brief in response to the summary judgment motion, Mrs. Donovan admits the Wilsons' factual statements that their property is not within the Harrah city limits. *See* response brief, page 2. Nor does she offer evidence to contradict the Harrah Code Administrator's affidavit stating that the Wilsons are not subject to any

6

requirements of the Harrah City Code. Mrs. Donovan offers no evidence to suggest that the Wilsons' property is within the city limits of any other municipality. In fact, her response brief does not respond to the Wilsons' argument that they are not subject to § 42.1 liability.

Accordingly, the Court concludes that the strict liability statute does not apply to the Wilsons.

Their motion is granted to the extent Mrs. Donovan seeks to hold them liable under the Oklahoma statute.

B.  Common law negligence:

Notwithstanding the enactment of a statutory liability provision for injuries resulting from dog bites, Oklahoma continues to recognize a common law negligence action based on injuries caused by a dog. *Hood v. Hagler*, 606 P. 2d 548, 552-53 (Okla. 1980). Although the Oklahoma courts have not listed the precise elements of that cause of action, liability is premised on an injury caused by a dog whose owner knew it had a vicious propensity and failed to take action to prevent the harm done to the injured party. *Id.* at 552.

In this case, the Wilsons argue Mrs. Donovan cannot establish the elements of a common law negligence claim because they are not the owners of the dog. Even if proof of ownership existed, however, they argue there is no evidence that they had actual or constructive knowledge the dog was vicious or had a propensity to attack.

The Oklahoma Supreme Court has not defined "owner" for purposes of a common law negligence claim based on a dog's conduct; however, the Court has provided the following guidance with respect to ownership under the "dog bite" statute:

> Neither the statute nor case law give direction as to how narrowly or broadly the term "owner" should be defined. There is, however, some feeling on the part of the

> public generally that one who chooses to harbor a dog should be responsible for unprovoked attacks of the animal. Moreover, one who treats a dog as living at his/her home and undertakes to control the dog's actions, may be considered to be the owner within the meaning of the law.

*Hampton By and Through Hampton v. Hammons,* 743 P.2d 1053, 1059 (Okla.1987) (footnotes omitted). The court concluded ownership could be extended to those "knowingly harboring animals of a vicious propensity."[2] *Id.* at 1061.

Based on the Oklahoma decisions, the Court concludes that ownership of a dog is not limited only to legal ownership, but may be extended to individuals who treat a dog as living on their property and who undertake to control the dog's actions, or who harbor the dog.

The Wilsons deny that they had legal ownership of the dog in question, or that they harbored the dog, treated it as living on their property, or otherwise kept the dog in a manner that could render them owners under the common law. Mrs. Donovan's evidence regarding ownership consists of the statements of Ronald Mays, who was present at the scene following the accident, and Jane Beller, the Wilsons' neighbor.

Ronald Keith Mays[3] testified that, shortly after the accident, a lady in a minivan stopped at the scene and told Mr. Mays the Wilsons owned the dog; Mr. Mays could not recall her name. Ronald Mays dep., Donovan Ex. 1, p. 42. When the Wilsons arrived at the accident scene, Mr. Mays pointed to a dog and asked Mr. Wilson if he owned the dog; according to Mr. Mays, Mr.

---

[2] *Hampton* did not hold that this definition applies to § 42.1 or to a common law negligence claim; instead, it held the Tulsa municipal code contained an express provision regarding owner liability for dog bites, and the court applied that provision. *Hampton*, 743 P. 2d at 1059. The court concluded the municipal code defines "owner" more broadly than the dog bite statute, as the municipal code extends ownership to one who "harbors," "maintains," or "exercises control" over a dog. *Id.*

[3] Although Mrs. Donovan submits excerpts from Ronald Mays' deposition in support of her response, she does not explain why he was present at the scene or his relationship, if any, to the Donovans. The evidence suggests that he may have been one of the other motorcycle riders who rode in the group accompanying the Donovans, but this is not clear from the record.

Wilson responded affirmatively. *Id.* at p. 44.

In his deposition, Mr. Wilson testified that there were three dogs in his driveway when Mr. Mays pointed to them and asked if Wilson was the owner; Mr. Wilson testified the admission of ownership he made referred to his two dogs, which were also present at the time of his statement. James Wilson dep., Wilsons' Ex. 7, p.15, lines 21-25; p. 16, lines 1-20. In her deposition, Mrs. Wilson also testified that all three dogs were in the driveway when her husband was asked if he owned the dog. Jessica Wilson dep., Wilson Ex. 3, p. 33, lines 10-16. Ronald Mays denies this, and recalled only one dog being present. Mays dep., Donovan Ex. 1, p. 44, lines 8-15.

Jane Beller states in her affidavit[4] that the dog "resides at the Wilsons' residence, " and the dog "had been around for several months prior to June of 2009." Beller affidavit, unmarked exhibit to Donovan supplemental response brief, ¶ ¶ 3-4.

The evidence on the issue of ownership presents a dispute of material fact. This appears to be acknowledged by the Wilsons in their reply brief, but in any event the Court finds that the testimony of Mr. Mays alone is sufficient to preclude summary judgment on this issue. However, the inquiry does not end there - - Mrs. Donovan cannot prevail on her negligence claim unless she also establishes the Wilsons had actual or constructive knowledge the dog had a propensity to harm others.

Oklahoma courts have long held that knowledge of the dog's vicious propensity is essential

---

[4]Mrs. Donovan initially submitted other documents reflecting statements reportedly made by Jane Beller. These are reflected in a letter from a private investigator to Mrs. Donovan's counsel and in the accident investigation report prepared by a deputy sheriff. *See* Donovan Exs.2 and 3. As the Wilsons point out, these purported statements of Mrs. Beller constitute hearsay and are not properly considered in a motion for summary judgment. *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995) (hearsay testimony that would not be admissible at trial is not sufficient to defeat a motion for summary judgment). Mrs. Donovan then supplemented her summary judgment response by submitting the sworn affidavit of Mrs. Beller. Thus, the Court has considered only the content of the affidavit in evaluating the evidence.

to establishing the owner's liability in a common law negligence action. *See Tidal Oil Co. v. Forcum*, 116 P. 2d 572, 574 (Okla. 1941); *McDonald v. Castle*, 243 P. 215 (Okla. 1926); *Ayers v. Macoughtry*, 117 P. 1088, 1092 (Okla. 1911) ("It is the keeping of the animal, with knowledge, either actual or constructive, of its dangerous or vicious propensities, which creates the liability.") As the Court explained in *McDonald*:

> At common law the presumption is that the dog is docile, tame, and harmless both as to persons and property, and the owner is not liable for injuries resulting from the mischievous or vicious acts of his dog unless he has knowledge, actual or constructive, that this dog is inclined to inflict such injuries. At common law proof of scienter has always been considered necessary to make out a case against the owner for damages done by his dogs.

*McDonald*, 243 P. at 215.

The Wilsons deny any knowledge or notice that the dog had previously attacked anyone or displayed any viciousness. According to Mrs. Wilson, prior to the accident at issue, she never saw the dog "act viciously or mischievously," and never saw it "attack people, animals, or anything else." Affidavit of Jessica Wilson, Wilsons' Ex. 5, ¶¶ 5-6. Mrs. Wilson also states she never saw the dog chase cars or observe anyone swerving or hitting their brakes because of the dog. *Id.*, ¶¶ 7-8. These statements are consistent with her deposition testimony, as she denied ever witnessing the dog attacking other animals or people, and never saw it chase cars or cause a car to swerve or brake. Jessica Wilson dep., Wilsons' Ex. 3, p. 27, lines 8-22; p. 30, lines 7-13. Mr. Wilson also makes these same specific statements in his affidavit. Affidavit of James Wilson, Wilsons' Ex. 6, ¶¶ 5-8. That affidavit is also consistent with his deposition testimony. James Wilson dep., Wilsons' Ex. 7, p. 10.

Mrs. Donovan's evidence of constructive or actual notice is limited to Mrs. Beller's affidavit in which she states succinctly that the dog "chases cars driving in front of the Wilsons' property with

regularity and such behavior is apparent to those in this neighborhood, including the Wilsons."
Beller affidavit, ¶ 5. That statement is not supported by any factual contention, and there is no factual explanation for Mrs. Beller's conclusory statement. Furthermore, there is no evidence that Mrs. Beller or anyone else told the Wilsons the dog was chasing cars or otherwise complained to the Wilsons about the dog. Mrs. Wilson denies that anyone did so. Jessica Wilson dep., Wilsons' Ex. 3, p. 27, lines 8-19; p. 28, lines 16-23. Nor is there any evidence that Mrs. Beller or anyone else reported the dog to the sheriff or any other local law enforcement official.

In the absence of actual notice, to establish constructive notice, there must be evidence that the Wilsons had notice of some fact that would place them on inquiry about the possible dangers posed by the dog. As the Wilsons point out, Oklahoma's statutory definition of constructive notice provides:

> Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.

Okla. Stat. tit. 25 § 13. Thus, the issue is whether the Wilsons had actual notice of circumstances which should have put them on notice that the dog was likely to cause injury to persons on the road in front of their property.

The only suggestion of notice is Mrs. Beller's statement that the dog's car-chasing was "apparent to those in this neighborhood, including the Wilsons." Mrs. Beller offers no factual basis for her conclusion that the Wilsons had such knowledge, and this is disputed by the Wilsons. Knowledge by Mrs. Beller that the dog chased cars is not evidence that the Wilsons knew it had a propensity, or even a tendency, to attack and inflict injury upon anyone. The record is devoid of competent evidence on the issue of notice to the Wilsons, and therefore Mrs. Donovan's negligence

11

claim must fail. Moreover, Mrs. Donovan presents no argument or authority which would support a contention that the dog's habit of chasing cars, even if known to the Wilsons, constitutes the type of behavior that would put them on notice that he had a propensity to inflict injury on others.

V. Conclusion:

Having reviewed all of the evidence presented by the parties, the Court concludes that Mrs. Donovan has failed to present sufficient evidence to create a material factual dispute regarding the Wilsons' actual or constructive notice of the dog's propensity, or even tendency, to cause injury to others or to pose a danger of such injury.

Accordingly, the Wilsons' motion for summary judgment [Doc. No. 20] is GRANTED. Judgment shall enter in favor of the Wilsons and against Mrs. Donovan on all claims asserted in this action.

IT IS SO ORDERED this 15th day of December, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE